Argued at Pendleton October 31, 1978, reversed
and remanded for new trial February 21, 1979

HASTINGS, *Respondent,*

*v.*

TOP CUT FEEDLOTS, INC., *Appellant.*

(No. L-10,891, SC 25468)

590 P2d 1210

Alex M. Byler, Pendleton, argued the cause for appellant. With him on the briefs were Peter H. Wells, and Corey, Byler & Rew, Pendleton.

[261]

John W. Smallmon, Hermiston, argued the cause for respondent. With him on the brief were R. William Riggs of Willner, Bennett, Riggs & Bobbitt, Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Bryson and Lent, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff brought this action to recover on a contract for the sale of corn silage which, in its various forms, is known as "green chop" and "pit silage." Some payment had been made under the contract; plaintiff sought judgment based on a reasonable value of $18 per ton for the silage or, alternatively, based on an agreed price of $18 per ton. Defendant asserted that it had paid the full price and, as an affirmative defense, that the parties had reached an accord and satisfaction on the disputed amount. The jury returned a verdict for plaintiff, and defendant appeals.

■  We conclude that this case must be reversed on defendant's fourth assignment of error:

> "The Trial Court erred in instructing the jury out of the presence and without notice to counsel where no record was made of the instructions."

The only written record we have of the exchange, which occurred after the jury had returned its verdict, consists of three slips of paper upon which the jurors wrote the following:

> "How much is green chop
> "How much is pit silage
> "Designate delivery charge for both
> "At what meeting or phone call did Hastings [plaintiff] come down $1.50 to 2.00 for the first time in conversation with Horn [president of defendant].
> "We need the chart of the dates of the meetings between Hastings and Horn."

The court orally responded to these questions from the jury but did not inform counsel and did not have a record made of his response. Defendant's counsel advised the clerk that he would be in his office and available by telephone. The only record of the court's response to the jury is his after-the-fact statement to counsel:

[263]

"THE COURT: Okay, I will—the Court will place upon the record that the only communication made by the Court to the jury—and the Court did not permit the jury any dialogue with the Court in the jury room, but the Court's comment simply was that they would have to rely upon their collective memories and the exhibits before them.

"One other communication was made and that was with respect to the time—the note relating to the times of the meetings. They wanted that chart, and I told them that that chart was not in evidence, that it was a chart used on the blackboard during opening statements. That was the extent of the Court's communication. As I say, the Court did not permit any questioning, dialogue, comments or otherwise from the jury during that meeting."

Defendant properly objected to this procedure and "that the communication was not put on the record."

ORS 17.325 provides as follows:

"After the jury have retired for deliberation, if they desire to be informed of any point of law arising in the case, they may require the officer having them in charge to conduct them into court. Upon their being brought into court, the information required shall be given in the presence of, or after notice to the parties or their attorneys."

In *Huntley v. Reed,* 276 Or 591, 595, 556 P2d 122 (1976), we "reluctantly conclude[d] that a violation of the statute must be treated as reversible error *in a situation in which no record* of any kind is made at the time of the instruction." (Emphasis added.) The reason for this rule is that in determining whether error committed by the trial court was prejudicial, we look to the entire record of the case. *State v. Joseph,* 252 Or 610, 613, 451 P2d 468 (1969); *Frangos v. Edmunds,* 179 Or 577, 611, 173 P2d 596 (1946). Where, as here, there is no such record, "the trial court's determination that [a party] was not prejudiced by the instruction must either be reversed or deemed unreviewable." *Huntley, supra* at 594. The interests of justice require

that the actions of trial courts be reviewable. Therefore, noncompliance with the statute is reversible error where trial counsel are not present and there is no record of what happened at the time of the instruction or communication by the court to the jury.

Plaintiff attempts to distinguish *Huntley* on several grounds. He points out that the questions of the jury were in writing and are part of the record. He contends that defendant does not claim that the trial court's recollection of his instruction was wrong or that the instruction the court said he gave was incorrect and that defendant does not challenge the recollections of the judge. However, these facts do not take this case out of the *Huntley* rule. ORS 17.325 is concerned with what the judge says to the jury. As we noted in *Huntley,* "[t]he obvious purpose of the statute is to relieve parties from the very dilemma presented here," namely, the absence of any record. 276 Or at 594-95. We therefore cannot agree that *Huntley* is distinguishable. We conclude the case must be reversed on this assignment of error.

■ Because this case is remanded for a new trial, we discuss the other assignments of error. Defendant asserts that the trial court, over exception, gave an incorrect instruction on accord and satisfaction.[1] The court instructed the jury, in part, as follows (the language defendant took exception to is underscored):

"* * * * *

"The law provides that where a party tenders a check to another in payment of a debt which is in dispute and on which check there was a notation that the check consititutes full and final payment of the disputed account, *acceptance and cashing of that check by the other party with knowledge of the notation satisfied any remaining obligation as between the parties.*

"* * * * *.

---

[1] After the controversy arose, defendant sent plaintiff a check bearing the notation, "balance on Top Cut pit." Defendant contended that plaintiff's cashing the check established an accord and satisfaction.

"First, that there was a dispute between the plaintiff and the defendant regarding the amount owing at the time the check was issued; and

"Second, that there was writing on the check which existed at the time the check was issued which clearly and unequivocally notified the plaintiff that the check was being tendered in full satisfaction of the remaining amounts owing; and

"* * * * *"

Defendant argues that the instruction could have led the jury to believe that "in order to find an accord and satisfaction it would have had to find that the check contained the exact words 'in full and final payment'." Although we are not convinced that the jury was misled, we agree that the instruction is too narrow and more latitude should be given to the jury, as stated in *Lenchitsky v. H. J. Sandberg Co.,* 217 Or 483, 490, 343 P2d 523 (1959), *" 'that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner.' "* (Emphasis theirs.)

■ Defendant objects to the second underscored portion of the instruction on the grounds that it allows the jury to find an accord and satisfaction only if plaintiff understood the legal effect of the writing on the check. We do not believe the jury could have so understood the instruction. The instruction is simply a paraphrase, to fit the facts of this case, of the following statement from *Harding v. Bell,* 265 Or 202, 209, 508 P2d 216 (1973):

"* * * Our cases have approved the following statement of the elements of accord and satisfaction.

" 'To constitute a valid accord and satisfaction it is also essential * * * that the debtor shall intend it as a satisfaction of [the original] obligation, and that such intention shall be made known to the creditor in some unmistakable manner. * * *' "

*See also Pellett v. Simpson Timber Co.,* 266 Or 39, 44, 511 P2d 357 (1973); *Lenchitsky v. H. J. Sandberg Co.,* 217 Or 483, 490, 343 P2d 523 (1959). This discussion

should not be read as a blanket approval of the instruction or those parts of the instruction not discussed herein.

Defendant's next assignment of error refers to the sufficiency of the evidence to support a count of plaintiff's complaint. Because the evidence on retrial may not be the same, we need not now consider this assignment.

■   Defendant also contends that the trial court erred in admitting plaintiff's exhibit 52 "as an aid to the jury in mathematical computation." The exhibit reads:

"PRICE COMPUTATIONS

| | |
|---|---|
| 18.00 - | $59,886.35 |
| 17.50 - | 55,577.95 |
| 17.00 - | 51,269.55 |
| 16.50 - | 46,961.15 |
| 16.00 - | 42,652.75 |
| 15.50 - | 38,344.35 |
| 15.00 - | 34,035.95 |
| 14.50 - | 29,727.55 |
| 14.00 - | 25,419.15 |
| 13.50 - | 21,110.75 |
| 13.00 - | 16,802.35 |
| 12.50 - | 12,493.95 |
| 12.00 - | 8,185.55 |
| 11.50 - | 3,877.15" |

The exhibit shows the amount due from defendant to plaintiff at the listed price per ton for the agreed amount of silage (which was 8,616.8 tons) minus the $95,216.05 already paid. The problems with the exhibit, as defendant points out, are that it gives too much emphasis to round numbers as the price per ton,[2] and it also gives computations for figures that were not stated by either party to be the agreed or reasonable value of the silage. The defendant also objected to the exhibit on the ground:

_____

[2] Defendant's theory at trial was that the reasonable value of the silage was not necessarily a round number, but was a number based on the net dry weight of the crop.

"* * * There is certainly not evidence on each one of these figures.

"* * * I don't think it's justified from the evidence. * * * I think without some evidentiary basis for figures other than 18 and $16 [evidence actually given], that this should not go in, and it does give undue emphasis to a per ton basis."

The determination of whether to permit such aids to go to the jury is a matter for the trial court's discretion. *Rich v. Cooper,* 234 Or 300, 312, 380 P2d 613 (1963). Despite the problems with this exhibit, we are not prepared to say that the trial court abused its discretion in admitting it, particularly since the trial court gave a proper limiting instruction. It is necessary that there be evidence to support the material included in the exhibit.

Reversed and remanded for a new trial.