Argued and submitted June 21, 1996, motion to dismiss denied; affirmed July 9, 1997

In the Matter of the Marriage of

Susan Diane SMITH,
*Appellant,*

*and*

Gregory Frederick KOORS,
*Respondent.*

(15-93-07671; CA A86296)

942 P2d 807

Larry R. Roloff argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before Deits, Chief Judge, Haselton, Judge, and Richardson, Senior Judge.

RICHARDSON, S. J.

Haselton, J., dissenting.

### RICHARDSON, S. J.

Wife appeals a judgment of dissolution of the parties' marriage, contending that the property division was inequitable, that the spousal and child support awards are inadequate, and that she should have been awarded attorney fees. Husband moves to dismiss the appeal on the ground that it was not taken from the final judgment in the action. ORS 19.010. We deny the motion to dismiss and affirm.

We first address husband's motion to dismiss. The court, in a posttrial opinion, set out its decision on all the issues including the division of property. Regarding the parties' residence, the opinion provided that

> "[wife] shall be awarded the residence subject to a judgment in favor of [husband] in the amount [of] $23,500, *payable on or before August 1, 1999.*" (Emphasis supplied.)

On October 6, 1994, the court signed a "Decree of Dissolution of Marriage and Judgment" that was entered October 7, 1994. That judgment, which had been prepared and submitted by husband's trial counsel, was "approved as to form and content" by wife's trial counsel. However, it made no reference to the due date of the equalizing judgment.

On November 2, 1994, the trial court signed and entered an "Amended Decree of Dissolution of Marriage and Judgment." This document was also prepared and submitted by husband's counsel and approved as to form and content by wife's counsel. The amended judgment is complete and identical to the first judgment except that it added language regarding the judgment in favor of husband, that "[n]o execution shall issue on said judgment until August 1, 1999." The consequence of the amendment was to add a reference to a due date of the judgment that had been omitted from the first judgment.

On November 7, 1994, after the amended judgment had been signed and entered by the trial court, wife filed her notice of appeal. The notice stated:

> "Plaintiff hereby gives Notice of Appeal from the Decree of Dissolution of Marriage and Judgment in this case on 6th day of October, 1994 * * *."

A copy of the first judgment entered October 7, 1994, was attached to the notice of appeal. The notice does not make any reference to the amended judgment.

■ ORS 19.029(1)(c) provides that a notice of appeal must include, among other things:

> "A notice to all parties or their attorneys as have appeared in the action or proceedings that an appeal is taken from the judgment or some specified part thereof * * *."

As we said in *Kent v. Lindstedt*, 138 Or App 316, 319, 908 P2d 833 (1995):

> "To satisfy that statutory requirement, the appeal must be taken from an appealable judgment, and the notice must contain enough information reasonably to apprise the adverse parties of that fact."

There are essentially two issues raised by husband's motion to dismiss: which of the two judgments is the final appealable judgment, and whether wife's notice of appeal satisfies the statutory requirements of notice.

■ Husband argues, *citing Mullinax and Mullinax*, 292 Or 416, 639 P2d 628 (1982), that the amended judgment superseded the first judgment and thereby became the only final judgment in the case. He argues that, because wife appealed from a superseded and replaced judgment, she did not appeal from a final judgment and her appeal should be dismissed.

Wife contends that the original judgment was complete and appealable and that the amended judgment merely corrected a clerical error. The amended judgment, she notes, did not expressly vacate the original judgment and, consequently, the original judgment, as amended, is the final judgment in the case. Because she timely appealed from that judgment, wife argues, husband's motion should be denied.

The procedural history of this case is strikingly similar to that of *Mullinax*, regarding which of two judgments is appealable. In *Mullinax*, after trial of the dissolution petition, the court issued a memorandum opinion and later

signed and entered a dissolution judgment. The parties discovered that the judgment omitted a provision about distribution of the child support payments and they stipulated to entry of an amended judgment correcting the mistake. The wife timely appealed from the amended judgment. The husband moved to dismiss, because the appeal was untimely in relation to the first judgment. The issue was whether the appeal was timely, and depended on determining which document was the final judgment for purposes of calculating the time for filing the appeal.

The Supreme Court rejected the husband's argument that, because the amended judgment was issued only to correct a clerical error, the original judgment was the final one for the purpose of measuring the appeal time. It held:

> "This amended decree, with the exception of the modification to the child-support provision, incorporates completely the provisions of the original decree. It neither expressly vacates nor nullifies that prior decree. However, as we now hold, it is the *effect* of the amendment, rather than its particular *form*, which is crucial in determining whether time for an appeal should be measured from its entry. Therefore, we conclude that for these purposes, the *effect* of the entry of this amended decree by stipulation of the parties was to supersede and replace the original decree." 292 Or at 432. (Emphasis in original.)

On the basis of that analysis, the court concluded that the wife's appeal was timely because it was filed within 30 days from the only judgment in the case, the amended judgment.

In this case, wife makes arguments similar to those advanced by the husband in *Mullinax* and rejected by the Supreme Court. On the basis of the Supreme Court's analysis, we conclude that the amended judgment superseded the original judgment and became the only judgment in the case.

■ Here, unlike in *Mullinax*, the notice of appeal was timely from either of the judgment documents. Consequently, the next inquiry is whether wife's notice of appeal was sufficient under ORS 19.029(1)(c). Husband argues that it is not because it designates the wrong judgment, the wrong judgment date and attaches a nonfinal judgment. Wife

argues that, under several of our cases, the notice is sufficient and that husband was not prejudiced.

The notice of appeal named the proper adverse party and notified him and the court that wife appealed from a judgment in the case. A notice of appeal is not jurisdictionally defective because it attaches the wrong document or incorrectly identifies the date of the proper judgment if there is in fact a final judgment. *State v. Etchison*, 142 Or App 396, 921 P2d 1333 (1996), *rev den* 324 Or 654 (1997); *Grant County Federal Credit Union v. Hatch*, 98 Or App 1, 777 P2d 1388, *rev den* 308 Or 592 (1989); *Werline v. Webber*, 54 Or App 415, 635 P2d 15 (1981), *rev den* 292 Or 450 (1982). The notice is sufficient if it contains enough information to reasonably apprise the adverse parties that an appeal is being taken from an appealable judgment. *Kent v. Lindstedt*.

Here, although wife's notice of appeal designated an incorrect date for the judgment and attached a superseded document, it named the adverse party and clearly indicated that she intended to appeal from the final judgment in the case. Husband could not have been misled or prejudiced. The motion to dismiss the appeal is denied.

We turn to wife's appeal. She contends that the court's property distribution was inequitable, that the spousal and child support awards are inadequate and that she should have been awarded attorney fees.

The parties were married in 1976. At the time of trial, husband was 45 and wife 46. They have two children; an 18-year-old who is emancipated, and an 8-year-old son, Nathan, a Down's Syndrome child who has multiple health problems. Husband, after becoming disabled while working as a bus driver, returned to college and, in 1990, acquired his chiropractic license and opened a practice in Eugene. His gross income from the practice is about $2,500 per month.

The parties lived apart during the time husband was in college and permanently separated in 1990. After the separation, wife attended school and became a licensed massage therapist. The trial court found that she could earn $600 per month taking into consideration that she would only work

part time in order to spend time with Nathan, who was in her custody.

The court awarded wife the parties' residence with a net value of $83,500. It awarded husband his chiropractic practice and an equalizing judgment of $23,500 to be paid by August 1, 1999. Husband is required to pay child support of $306 per month. Wife was awarded $435 per month spousal support for five years and then $250 per month for an additional three years. Husband must pay 75 percent of all medical costs for Nathan that are not otherwise covered by insurance.

■ Wife's principal argument regarding the property division is that she will have to sell the real property in order to pay the $23,500 judgment to husband. Wife presently has the residence rented for $750 per month. She contends that the court should have taken into account the costs of sale and the effects of capital gains taxes in evaluating the award of property. We have held that consideration of the tax consequences and the costs of selling real property is not appropriate unless a sale of the property is contemplated. *Follansbee and Ackerman*, 115 Or App 39, 836 P2d 763 (1992). There was no evidence of an impending sale of the residence or of the costs of sale and tax consequences. The trial court did not err in failing to discount the value of the property for taxes and costs of sale.

■ Wife also argues, in relation to the property division, that the court erred by not taking into account the expected inheritance husband would receive from his mother. Although husband's mother was still alive at the time of trial, wife argues that because husband is the sole heir, it is inequitable for the court to exclude the value of any inheritance from the property division.[1]

The parties received substantial loans and monetary gifts from husband's mother during the marriage. They used

---

[1] After the trial court had issued its opinion letter, wife moved to reopen the trial or for a new trial on the ground that husband's mother was now deceased. Wife filed her notice of appeal before any ruling on that motion and the trial court stayed ruling on the motion pending appeal.

the money for the down payment on the residence, for husband's school expenses and to finance the start-up of his chiropractic practice. Wife also received money from husband's mother after the parties separated in 1990 to pay for her education and acquisition of her massage therapist license. The record reflects that the periodic gifts and the loans, which were never repaid, had depleted husband's mother's estate. Because of the long separation of the parties prior to trial, the fact that the status of the estate was uncertain as was its value and the fact that both parties had already received substantial benefits from husband's mother, we decline to disturb the court's determination. *See Kopplin and Kopplin,* 74 Or App 368, 703 P2d 251, *rev den* 300 Or 162 (1985).

■ In a single assignment, wife contends that the amount and duration of spousal support is inequitable and that the amount of child support is inadequate. The principal basis of this claim of error is the needs of the minor child, Nathan. She argues that his substantial needs require her constant attention so that she can work only part time. In addition, she argues that she must be with the child at all times when he is not in school; consequently, she can get relief from that duty only by paying for special care. She testified that she wanted to send the child to a special private school and needed additional funds for that.

The trial court set child support consistent with the guidelines. It calculated wife's income on the basis of part-time work in consideration of her need to be with the child. It also specifically rejected her request for additional child support in order to send Nathan to private school. The court found specifically that Nathan's needs were adequately met by the public school program. Part of the public school program provides for after school care for Nathan. Additionally, the judgment provides:

"The child support amount is based on the presumption that [husband] will share the physical burdens and responsibilities of the child, at least on a 'normal visiting parent' basis."

■ In order for the court to deviate from the presumptive amount established under the child support guidelines,

the court must make findings that the presumptive amount is unjust or otherwise inappropriate. *Dawson and Dawson*, 142 Or App 35, 919 P2d 517 (1996); ORS 25.280. The trial court addressed that issue but declined to deviate from the guideline's calculation. We agree. A substantial part of the expense of Nathan's special care is borne by insurance and a public grant. Husband is required to pay 75 percent of any medical expenses for Nathan that are not otherwise covered. Additionally, the court calculated wife's income on the basis of part-time work in order to accommodate her need to spend more time with Nathan. Wife has not established a basis for the court to depart from the child support guidelines.

■ Wife contends that she should have permanent spousal support because she has dedicated her life to the care of Nathan and his needs for care will continue for the balance of his life. She argues that, although she established a massage therapy practice, her income will not be sufficient to allow her to properly care for Nathan. Although the needs of a dependent may be considered in setting spousal support, ORS 107.105(1)(d)(G), most of the points wife makes regarding spousal support are more germane to an increase in child support and we have addressed them in regard to that issue.

During their marriage, the parties incurred substantial debt. Husband was required to assume most of the obligations. The parties' standard of living and lifestyle was in some measure supplemented by contributions from husband's mother. Consequently, whatever standard of living existed before their permanent separation in 1990 will be difficult to duplicate on the basis of the available income without supplementation. During the separation of almost six years, wife developed a career. We conclude that she will be able, during the eight-year term of spousal support, to become relatively self-supporting and to attain a standard of living not overly disproportionate to that which the parties would have enjoyed had they lived on their own income. We see no basis for increasing spousal support or increasing its duration.

In her fourth assignment, wife argues that the trial court erred in not awarding her one-half of husband's monthly "pension" of $498. Other than the claim of error, she

makes no argument in support of this contention. There is nothing presented for us to address.

■ Wife's final assignment alleges that the trial court should have awarded her attorney fees because she has a limited income. Allowance of attorney fees is within the discretion of the court, ORS 107.445, and we review only for an abuse of that discretion. *Richardson and Richardson*, 307 Or 370, 385, 769 P2d 179 (1989); *Redler and Redler*, 112 Or App 203, 208, 827 P2d 1363 (1992). We find none.

Motion to dismiss denied; affirmed. Costs, not including attorney fees, to husband.

**HASELTON, J.,** dissenting.

This appeal should be dismissed for lack of jurisdiction. *Stahl v. Krasowski*, 281 Or 33, 573 P2d 309 (1978); *Kent v. Lindstedt*, 138 Or App 316, 908 P2d 833 (1995).

A notice of appeal, viewed in its entirety, must include some "intelligible reference * * * to the judgment being appealed." *Grant County Federal Credit Union v. Hatch*, 98 Or App 1, 6 n 4, 777 P2d 1388, *rev den* 308 Or 592 (1989). That requirement is *jurisdictional*:

> "If anything within the notice of appeal is jurisdictional, * * * it must be a description of what action of the trial court is appealed from, because, other than the title of the case, that is the most important thing which the notice contains." *Stahl*, 281 Or at 39.

Here, the notice of appeal did not satisfy even that minimal requirement.

The majority concludes, and I agree, that the appealable judgment in this case was the November 2, 1994, "Amended Decree of Dissolution of Marriage and Judgment." *See Mullinax and Mullinax*, 292 Or 416, 639 P2d 628 (1982). Wife's notice of appeal does not refer to that judgment but, instead, refers only to the superseded, nonappealable October 7, 1994 judgment:

> "Plaintiff hereby gives Notice of Appeal from the Decree of Dissolution of Marriage and Judgment in this case on 6th [*sic*] day of October, 1994 * * *."

Wife attached only a copy of the October 7 judgment to the notice of appeal. *Compare Ensley v. Fitzwater,* 293 Or 158, 645 P2d 1062 (1982) (notice of appeal was jurisdictionally sufficient where text of notice referred to nonappealable order, but appealable judgment was attached to notice); *Werline v. Webber,* 54 Or App 415, 635 P2d 15 (1981), *rev den* 292 Or 450 (1982) (where text of notice of appeal stated that appeal was taken from "judgment," but copy of nonappealable order was attached to notice, notice was nevertheless jurisdictionally sufficient). Thus, wife both referred to the "wrong" judgment *and* attached the "wrong" judgment, and it is impossible to discern from the notice that the appeal is, in fact, being taken from an appealable disposition.

*Stahl* is closely analogous, and *Kent* is on point. In *Stahl,* the defendant's notice of appeal stated that the appeal was being taken from an order denying a motion for judgment notwithstanding the verdict, and the only disposition attached to the notice was that order. The Supreme Court considered whether, notwithstanding those deficiencies, the notice was sufficient to confer appellate jurisdiction. The court concluded that, under ORS 19.029(1)(c), and ORS 19.033(2), the notice of appeal was fatally deficient.[1] In so holding, over a strong dissent, the majority rejected the argument that

> "any document entitled 'notice of appeal' which was filed within the required time would be sufficient to give the court jurisdiction whether it contained anything at all, because it could be inferred therefrom that the party filing it intended to appeal and there is rarely any prejudice involved. * * *
>
> "* * * * *

---

[1] ORS 19.029(1)(c) provided:

"The notice of appeal shall contain the following:

"* * * * *

"A notice to all parties or their attorneys that an appeal is taken from the judgment or some specified part thereof and designating who are the adverse parties to the appeal."

ORS 19.033(2) provided:

"The serving and filing of the notice of appeal as provided in ORS 19.023 to 19.029 is jurisdictional and may not be waived or extended."

"It is our conclusion that it was the intention of both the interim committee and the legislature to treat the designation of that which is appealed from as 'jurisdiction.' " 281 Or at 38-39[2]

In *Kent*, we described the pertinent facts as follows:

"The trial court entered judgment on December 29, 1994. Plaintiff timely filed a motion for a new trial under ORCP 64. For reasons that are not apparent from the record, on January 30, 1995, plaintiff then filed a notice of appeal. Defendants moved to dismiss that appeal, on the ground that it was premature, the trial court not yet having disposed of the new trial motion. Plaintiff then withdrew the motion for a new trial. On May 4, 1995, we issued an order dismissing the appeal as premature. The appellate judgment was issued on June 29, 1995, and was entered in the trial court docket on July 12, 1995.

"On August 11, 1995, plaintiff filed a second notice of appeal, which purported to appeal from 'the judgment entered * * * on July 12, 1995.' Attached to the notice of appeal was a copy of this court's judgment entered on July 12, 1995." 138 Or App at 318.

After canvassing *Stahl, Grant County Federal Credit Union, Ensley,* and *Werline,* we concluded:

"In this case, two judgments have been entered into the trial court record: the trial court's judgment of December 29, 1994, and the appellate judgment entered July 12, 1995. The only judgment mentioned on the face of the notice of appeal is the appellate judgment entered on July 12, 1995; it is, in fact, specifically identified by date of entry. The only judgment that is attached to the notice is the appellate judgment entered on July 12, 1995. Unlike *Werline, Ensley*

---

[2] In his dissenting opinion, Chief Justice Denecke urged the contrary view:

"In my opinion the intention of the 1959 and ensuing legislatures, consistent with the intention of the bar which requested the legislation, was to create jurisdiction in the appellate court if a document was timely served and filed, which reasonably could be construed to give notice to court and counsel that the party filing the document was appealing a decision of the trial court in a certain case. If the appealing party's failure to comply with the statute in any way prejudices the other party, the appellate court can dismiss the appeal for failure to comply. ORS 19.033(3). Any more restrictive interpretation of our appellate procedure statutes is a reversion to narrow formalism which, in my opinion, is not required by the language of the statute." *Stahl v. Krasowski,* 281 Or 33, 40-41, 573 P2d 309 (1978).

and *Grant County Federal Credit Union*, in this case, there is no way to determine that plaintiff really intended to appeal from any judgment other than the one she specifically mentioned and attached to her notice. To the contrary, this case is more analogous to *Stahl*, in that there is nothing in the notice of appeal that refers to an appealable judgment. We conclude, therefore, that plaintiff's appeal was properly dismissed." *Kent*, 138 Or App at 320.

Notwithstanding those holdings, the majority contends that the notice of appeal in this case was sufficient under our analysis in *Grant County Federal Credit Union*. That case is, however, materially distinguishable. There, as we explained in *Kent*:

"[D]efendants' notice of appeal referred to a 'judgment' of the trial court, but it identified the wrong date for the judgment. Attached to the notice was a copy of an unappealable order, not a judgment. Compounding the problem was the fact that there were a number of different parties to the action, and the trial court had entered multiple judgments. Nevertheless, we found the notice of appeal to be 'minimally adequate.' We held that, *because the sole adverse party identified in the notice of appeal was named in only one of the judgments entered by the trial court,* 'it is possible here to determine from which judgment the appeal is taken.' " 138 Or App at 320, *quoting Grant County Federal Credit Union,* 98 Or App at 6 n 4.

Here, in contrast, husband was named in both the October 7 and the November 2 judgments. Consequently, the notice of appeal's designation of husband as an "adverse party" did not disclose that the appeal was necessarily from the latter. Thus, "there is no way to determine that [wife] really intended to appeal from any judgment other than the one she specifically mentioned and attached to her notice." *Kent*, 138 Or App at 320.

Ultimately, the majority attempts to avoid *Stahl* and *Kent* by reasoning that, in these circumstances, husband must have known that the appeal was *really* from the November 2 judgment—notwithstanding wife's repeated and *explicit insistence that she was appealing from the October 7* judgment. The logical extension of that reasoning is that, whenever a notice of appeal designates a nonappealable

order or judgment, this court must assume, for jurisdictional purposes, that the appeal is actually from any appealable disposition that occurred within 30 days of the filing of the notice of appeal. There is, no doubt, an appropriate Latin maxim for such reasoning; in English, it is best, if respectfully, termed "tautological." In all events, *Stahl* explicitly rejected that approach.

Finally, a word to the wise for future reference. Appellate counsel are not somehow forced by ORS 19.029(1) or the rules of appellate procedure to choose *between* judgments in designating judgments in notices of appeal. Common sense—and common practice—dictate "covering all the bases" by referring to all arguably applicable judgments and attaching them to the notice of appeal. The incremental photocopying expense is well spent.

I respectfully dissent.